AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)        ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
02/08/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
02/08/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ JD _____ DEPUTY

United States of America

v.

ANTHONY HOLMES,

Defendant.

Case No.   8:21-mj-00076-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of January 24, 2021, in the county of Orange, in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
/s/
*Complainant's signature*

Michael Greene, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   February 8, 2021

_____
*Karen E. Scott*
*Judge's signature*

City and state:   Santa Ana, California

Hon. Karen E. Scott, U.S. Magistrate Judge
*Printed name and title*

AUSA: S. Tenley

## **AFFIDAVIT**

I, Michael Greene, being duly sworn, declare and state as follows:

## I. **INTRODUCTION**

1.   I am a member of the Fullerton Police Department ("FPD") and I am assigned to the FBI's Orange County Violent Gang Task Force ("OCVGTF") as a Task Force Officer ("TFO").  The OCVGTF is comprised of federal and local law enforcement agencies, including but not limited to, the FBI, the Internal Revenue Service-Criminal Investigations, ATF, FPD, Anaheim Police Department, Santa Ana Police Department, and the Orange County Probation Department. The OCVGTF is responsible for, among other things, investigating violations of federal law committed by criminal street gangs, the Mexican Mafia, and other violent criminal organizations in Orange County.  As a TFO, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.   I have been employed as a police officer for ten years. I began my career with the Downey Police Department in 2010. I was employed as a police officer and worked patrol, as a bike patrol officer and on the Crime Impact Team. I have been a police officer with FPD for seven years. In addition to my task force assignment, my assignments with the FPD have included

- 1 -

patrol, Field Training Officer, Special Weapons and Tactics Team member, Directed Enforcement Team, Drug Recognition Expert, and Gang Unit Detective.

3.    As a member of the FPD Gang Unit, I have investigated gang related crimes which include homicide, assault with a deadly weapon, major assaults, drug distribution, witness intimidation, weapon possession, auto theft, robbery, burglary, and vandalism.  During the course of my ten-year career, I have participated in approximately 50 surveillance operations, authored multiple search warrants including state wire taps and pen registers, managed informants, monitored electronic surveillance operations, and participated in numerous controlled purchases of drugs and firearms. Additionally, I have testified in both state and federal courts.

4.    I have taken numerous classes related to gangs, drug use, drug distribution, and manufacturing of drugs. I attended 80 hours of instruction in basic narcotics investigation while at the Orange County Sheriff's academy. I have attended an 80-hour Drug Recognition Expert training course sponsored by the California Highway Patrol and was previously a Drug Recognition Expert.  I have attended courses offered by the State of California regarding the investigative use of wiretaps and the interception of wire and electronic communications.  I am a member of the National Tactical Officer Association and Orange County Gang Investigators Association. I have spoken to gang members who have told me of the manner in which they plan and commit their crimes and attempt to avoid detection and

- 2 -

apprehension.  I have also monitored street gang activity in the three cities of Fullerton and Downey by identifying and establishing street gang boundaries via graffiti.  I have taken statements from admitted gang members and associates also with crime reports indicating gang crimes and gang violence in affected areas.  I have worked to identify street gang members, associations, and rivalries via admissions, statements, gang tattoos, and clothing along with the crimes which they commit.

## II. PURPOSE OF AFFIDAVIT

5.    This affidavit is made in support of a criminal complaint against, and arrest warrant for, ANTHONY HOLMES ("HOLMES") for a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm).

6.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. STATEMENT OF PROBABLE CAUSE

7.    Based on my review of a recorded 911 call, Garden Grove Police Department ("GGPD") radio dispatch traffic, body worn camera footage, a report prepared by GGPD Officer Gianlucca

- 3 -

Maniaci, photographs, and a written statement made by HOLMES, I learned the following:

      a.   On January 24, 2021, Garden Grove police officers responded to Target, near the intersection of Harbor Boulevard and Chapman Avenue, in Garden Grove, California as a result of a 911 call.  The 911 caller reported that he had been confronted by two Hispanic males, one of whom had his hand on his hip as if armed.[1]  The 911 caller felt threatened and believed the man had been armed.  The 911 caller described the male who appeared armed as having face tattoos, among other descriptors.  The men were in a red SUV.

      b.   When Officer Maniaci arrived at the scene and met the 911 caller, the 911 caller further explained that he was aggressively approached by a Hispanic male with face tattoos.  He was wearing a bandana and black jacket with white stripes.  As the man approached, the man had his hand in his right jacket pocket, near his waistband, as if he was carrying a handgun.  The man asked the 911 caller, "Where you from?"  The 911 caller was scared because he believed the suspect was armed.

      i.   In my experience, I know gang members from southern California often pose the question "Where you from?" while contacting those who may be rival gang members.  When a gang member asks another rival gang member "Where you from?" the answer often results in violent assaults, robberies, and even homicide.

---

[1] I reviewed the criminal history of the 911 caller and learned that he had a 2002 burglary conviction, for which he was sentenced to three years' probation and 20 days' jail.

c.   When Officer Maniaci asked the 911 caller whether the red SUV was still in the parking lot, the 911 caller directed Officer Maniaci to a red SUV in front of Target, which another GGPD patrol car had identified and was shining a spotlight on.

d.   GGPD Officer Valencia had responded to Target and located a vehicle which matched the suspect vehicle description parked in a stall in the parking lot.[2]  Officer Valencia got out of his patrol vehicle and contacted the occupants of the vehicle.  HOLMES, who has facial tattoos, was in the driver's seat.[3]  A second man, later identified as Anthony Saucedo, was in the backseat.[4]  Officer Valencia observed Saucedo moving around in the back seat as if to hide from view or conceal something. Officer Valencia observed that the other adult occupants he could see also appeared surprised and were moving their hands around inside the vehicle.  In addition to HOLMES and Saucedo, two women were in the car: Saline Quintanar in the front passenger seat and Jade Jordan in the back seat.  There were also several small children in the back seat.

---

[2] The vehicle had a bullet hole through the front windshield.

[3] I am familiar with HOLMES and know him to be a Fullerton Tokers Town gang member with a moniker of "Spanky".  I spoke to CDC Parole Officer Xavier Tong who confirmed HOLMES was on parole with search and seizure conditions when the events described above occurred.

[4] I am familiar with Saucedo and know him to be a Fullerton Tokers Town gang member with a moniker of "Lil Popeye."  Officer Tong confirmed Saucedo was on parole with search and seizure conditions when the events described above occurred.

e.    Officer Valencia ordered the occupants out of the
vehicle.  Before Jordan got out of the vehicle, she handed
Officer Valencia her purse, which Officer Valencia handed to
Officer Maniaci who placed it on the ground near the vehicle.

f.    GGPD Officer Jeff Nguyen had arrived at Target
and advised Officer Maniaci that HOLMES was on active parole.
Officer Maniaci requested consent to search the vehicle from
HOLMES.  HOLMES responded, "I am on parole, so."  When Officer
Maniaci asked, "You good if we through there?," HOLMES
responded, "No, I ain't trippin', it's not my car though."
HOLMES said the vehicle belonged to QUINTANAR.

g.    GGPD officers searched the Traverse as well as
the purse Jordan had been holding in the backseat.  In the
purse, Officer Maniaci located a tan make-up bag that appeared
too heavy to contain make-up.  Inside of the make-up bag was a
loaded Taurus .357 Magnum revolver, bearing serial number
D011956.[5]  Officers also discovered small amounts of controlled
substances and controlled substance paraphernalia.  HOLMES,
Saucedo, Quintanar, and Jordan were placed under arrest.

h.    When HOLMES was booked in the GGPD jail, Officer
Nguyen read HOLMES his <u>Miranda</u> rights and asked HOLMES whether
he wanted to make a statement.  HOLMES indicated he understood
his rights and that he wanted to make a statement.  HOLMES
explained that while he was coming down from heroin, he observed

---

[5] Based on my training and experience, and my conversations
with other experienced law enforcement officers, I know that
Taurus handguns are manufactured in Brazil and imported into the
United States through Florida.

an armored vehicle in the Target parking lot.  He then hid the gun in Jordan's purse, which was on the floorboard behind his seat.  HOLMES said the firearm was a .357 caliber revolver and that it was loaded.  He said he purchased it for $600 but did not know whether it was stolen.   When Officer Nguyen asked HOLMES whether he confronted anyone in the Target parking lot, HOLMES admitted to contacting someone and asking where he was from.  HOLMES claimed he was not armed at the time.

i.   HOLMES told Officer Nguyen he wanted to prepare a written statement.  The statement said, in pertinent part: ". . . no one knew that I was carrying a firearm.  I placed this firearm in the backseat of car in a womans purse.  A 357 calliber was the weapon.  It was fully loaded.  Im taking full responsibility for this firearm being in my possession . . ." HOLMES signed the statement.

8.   I reviewed a report of HOLMES's criminal record and learned that HOLMES has the following prior felony convictions:

a.   Prohibited person possess or own ammunition, in violation of California Penal Code Section 30305(A)(1), in the Superior Court of the State of California, County of Orange, case number 13NF1598, on or about June 17, 2013;

b.   Possession of a controlled substance, in violation of California Health and Safety Code Section 11377(A), in the Superior Court of the State of California, County of Orange, case number 13NF3394, on or about December 20, 2013;

c.   Robbery, in violation of California Penal Code Section 211-212.5(c), in the Superior Court of the State of

California, County of Orange, case number 14NF3610, on or about
September 3, 2015;

        d.    Possession For Sale of Narcotics, in violation of
California Health and Safety Code Section 11351, in the Superior
Court of the State of California, County of Orange, case number
20WF2222, on or about October 26, 2020; and,

        e.    Possession For Sale of Controlled Substance, in
violation of California Health and Safety Code Section 11378,
and prohibited person possess or own ammunition, in violation of
California Penal Code Section 30305(A)(1), in the Superior Court
of the State of California, County of Orange, case number
20WF2222, on or about October 26, 2020.

## IV. <u>CONCLUSION</u>

    9.    For all the reasons described above, there is probable
cause to believe that HOLMES has committed a violation of 18
U.S.C. § 922(g)(1) (felon in possession of a firearm).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this <u>8th</u> day of
February, 2021.

_____
HONORABLE KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE